IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 24, 2010 Session

## STATE OF TENNESSEE v. JOANN WILLIAMSON

**Appeal from the Criminal Court for Campbell County**
**No. 14061      E. Shayne Sexton, Judge**

**No. E2009-02363-CCA-R3-CD - Filed February 28, 2011**

The Defendant, Joann Williamson, pled guilty to facilitation of the manufacture of methamphetamine, a Class C felony, and two counts of child abuse and neglect, a Class D felony. See T.C.A. § 39-17-417 (2010); T.C.A. § 39-15-401 (Supp. 2008) (amended 2009). She was sentenced as a Range I, standard offender to six months' incarceration and three years, six months' probation for the facilitation conviction and four years' probation for each of the child abuse convictions, to be served consecutively to the facilitation conviction for an effective twelve-year sentence. The Defendant's plea agreement reserved a certified question of law regarding the legality of the warrantless search of her home. The Defendant contends that the trial court erred in denying her motion to suppress evidence and that the State should not be allowed to rely on more than one exception to the warrant requirement. The State contends that the Defendant did not properly reserve the certified question. We hold that the Defendant's certified question was not properly reserved. The appeal is dismissed.

**Tenn. R. App. 3 as of Right; Appeal Dismissed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

David M. Pollard, Jacksboro, Tennessee, for the appellant, Joann Williamson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William Paul Phillips, District Attorney General; Michael O. Ripley, Senior Assistant District Attorney General; and Leif Jeffers, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

At the hearing on the motion to suppress, Josh Goins testified that he was an agent with the Eighth Judicial Drug Task Force and that at the time of the Defendant's arrest, he was a detective with the Campbell County Sheriff's Office. He said he had worked in law enforcement approximately six years, attended the Tennessee Methamphetamine Task Force basic laboratory technician school, and investigated approximately one hundred methamphetamine laboratories. He said he was familiar with the hardware used in and odors associated with methamphetamine production.

Agent Goins testified that on January 3, 2009, he went to the Defendant's home after he received an anonymous tip from a male that someone was "cooking" methamphetamine in the basement. He said that Detective Jamie Hall was with him and that neither was wearing a uniform. He said that he knocked on the front door and that the Defendant came to the door. He said he showed her his identification and explained why he was there.

Agent Goins testified that when the Defendant opened the door, he could smell the distinctive odor of methamphetamine manufacturing and could see children in the living room. He said he told the Defendant that the children could be in danger from what was happening downstairs. He said that the Defendant stepped back and opened the door and that he understood her action as an invitation to enter and check the home.

Agent Goins testified that another adult, Amy Cody, was upstairs and that she was also charged with offenses related to the incident. He said that when he entered the home, the Defendant asked who had called with the tip and that he said he could not tell her. He said the Defendant did not ask if he had a search warrant and did not ask to see one. He said that he told the children to move to the back of the home and that he opened a door for ventilation. He said he was concerned about the children's safety.

Agent Goins testified that he opened the basement door and that the smell intensified. He said that as he investigated the basement, the Defendant remained upstairs with the children. He said the Defendant said nothing about the methamphetamine lab. He said that in the basement, he saw an individual, later identified as David LeMarr, standing beside a methamphetamine lab that was on a door laid across two sawhorses. He said the methamphetamine was cooking, with visible gases coming from containers on the door. He said the gases formed a thick smoke, requiring him to kneel down to see. He said that he called for other methamphetamine technicians and equipment and that the investigation took approximately six hours. He said he did not talk to the Defendant again during that time.

On cross-examination, Agent Goins testified that he thought it was raining on the night of the incident but that he was not sure. He said he smelled the methamphetamine cooking as soon as he left his car, which was parked in the driveway. He agreed he did not see smoke when he was outside or at the front door. He said that when he saw the children, they were standing in the living room and watching the door. He agreed the children were not in any obvious distress, but he said he felt the children were in danger. He said that he did not obtain oral or written consent to search the home but that he interpreted the Defendant's body language as consent.

On redirect examination, Agent Goins testified that he did not draw his gun, bang on the door, or threaten the Defendant when he arrived at the home. He said he did not think he needed a search warrant due to the circumstances and the danger to the children.

On recross-examination, Agent Goins testified that the children tested negative for methamphetamine exposure. He agreed he was not at the Defendant's home to pursue a fleeing suspect, protect himself from harm, or prevent the destruction of evidence.

The Defendant testified that on January 3, 2009, she and her husband lived with their two grandsons in the home they had occupied for thirty-five years. She said she answered a knock on the door and met Agent Goins, who identified himself. She said that she asked him what he wanted and that he said he smelled a strange odor coming from her house as he passed by. She said that he asked to come in and search and that she told him he needed a search warrant. She said he told her that he did not need a search warrant because he smelled the odor. She said that she repeated her request for a warrant and that he pushed the door open with his foot and put his hand on his holster.

The Defendant testified that when Agent Goins entered the house, her grandsons were playing with their PlayStation and that the detective stepped over the PlayStation to ask what was in the next room. She said that he went from room to room and then to the basement door and that he wanted her to unlock the door. She said that she unlocked the door but that she told him she did not know anyone was in the basement. She said she stood at the top of the stairs and saw Agent Goins standing on the bottom landing before the step into the basement. She said Agent Goins drew his gun and said, "If anybody is down there, they better come out before I go to shooting." She said she did not see any smoke coming from the basement and did not go down the stairs.

On cross-examination, the Defendant testified that she was scared when Agent Goins entered the house. She said that the only other detective she saw that night was Detective Hall and that she first saw Detective Hall standing in the hallway when Agent Goins came up the basement stairs. She said Detective Hall told her and Ms. Cody to take the children

into the kitchen and open the door. She agreed she did not tell Detective Hall that Agent Goins had threatened or frightened her.

The Defendant testified that the basement door was locked from the inside and that it was the only way in or out of the basement. She said that the only person she could identify being in the basement that day was Mr. LeMarr because the police later brought him upstairs. She said that she had never smelled methamphetamine but that she had used it one time. She denied using methamphetamine on the day her home was searched and said she was sick that day. She denied smelling methamphetamine in her house or knowing that anyone was manufacturing it.

The Defendant testified that the police took her to jail that night. She said that they arrested her husband, son, and other people who were in the basement, but she denied knowing that those people were in the house. She said that the children were taken into state custody and that three of them were her son Keith's children. She said she knew Keith was in the house on January 3, 2009, because he was looking for his father.

After receiving the evidence, the trial court found the following:

> [T]he consent issue is not favorable for the State. I don't think that . . . you have enough consent to make entry into a home by–if you take the State's proof where the defendant merely stepped away. That's, in my opinion, not sufficient. There needs to be some greater consent, in particular, when we're talking about entry into a home. That's–that is a person's castle and before any law enforcement can enter a home, it must be . . . clear and equivocal–unequivocal consent–an intelligent and knowing consent at any rate. But in this case, the State has failed to show that there was a valid consent, and that's not–that's without weighing the credibility of the defendant in that analysis.
>
> . . .
>
> I don't think there is any question the knock and talk theory would allow the officer to go to the porch and ask and seek information based on the tip and based on the smell. What happens after that becomes very sketchy.
>
> . . .

-4-

The pervasive issue in this case is whether or not the arresting officer had exigent circumstances to make entry into the home. In reviewing the testimony and weighing the credibility of each witness, the Court finds that the defendant's testimony was highly incredible noting primarily the lack of knowledge that other people were in the house. I–in the setting that as–as was explained to me, that is not likely nor is it probable, and it cuts against her credibility.

If you completely discount the credibility of the Defense witness, then you have, of course, the State's witness, the only–the sole witness called by the State. There is still a grave–a great issue concerning whether . . . there [are] sufficient exigent circumstances.

. . .

In this particular case, the officer has not been–it's certainly not disputed the officer was in a spot that was within the knock and talk permissive area. His approach to the home which was initiated by an anonymous tip and also the smell that he has now come to associate with the manufacture of Methamphetamine took him straight to the door and from that spot, that spot alone is where after consulting with the defendant, saw the children inside the home and at that point decided that exigent circumstances exist for his entry.

. . .

I find there was no consent given in any form or fashion. So, this question is smell and viewing the children–is that sufficient exigent circumstance. I didn't–of course, I don't have the luxury of a great–of a lot of cases to go by, but our courts have accepted the . . . proposition that warrantless entry can be made into homes to protect human life.

This officer has testified that through his training, [he] knows that the gases are dangerous and knows the smell through the hundred plus times he's been on Methamphetamine labs.

-5-

[Defense counsel] points out that there was no–it was a negative test. What happens after entry is really of no consequence. It may well go toward the vouching for the credibility of his witness–of the defendant's witness. But in my opinion–and this is a close call . . . there was sufficient exigent circumstance to make entry, given the knock and talk spot was established and appropriate from that spot outside the home looking in, smelling the Methamphetamine components which were cooking and seeing the children, that there [were] exigent circumstances for the purpose of looking out for the safety of those children. And because of that, I'm going to uphold the search, and the items that were seized and viewed at the time of the arrest and entry are admissible at the trial.

Following the trial court's denial of the motion to suppress, the Defendant entered her guilty plea at a hearing on October 26, 2009. The following passage was handwritten above the signature lines on the waiver of jury trial and request for acceptance of guilty plea form:

> Defendant, pursuant to TRCP. (37)(b)(2)(D), has reserved a question for appeal. State agrees that pending appeal, all sentencing issues shall be stayed. (specifically, payment of costs & jail service)

Also on October 26, 2009, the trial court filed the Defendant's certified question of law as a separate document signed by the trial court and counsel for the Defendant. The prosecutor did not sign the document but wrote, "N/A per T.R. Crim. Pro. 37(b)(2)(D)" on the State's signature line. The trial court signed the final judgments on October 29, 2009, but the judgments failed to incorporate by reference the document stating the certified question. The Defendant filed her notice of appeal on November 17, 2009. The trial court clerk did not file the judgments until February 9, 2010.

The State contends that the Defendant did not properly reserve the certified question because a contemporaneously filed order incorporating the question does not satisfy the procedural requirements of Tennessee Rule of Criminal Procedure 37(b)(2) and State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). The State concedes that this court addressed the issue in a June 8, 2010 order denying the State's motion to dismiss the appeal. The order contained the following analysis:

> Even without the consent of the State, a defendant may appeal from a judgment entered pursuant to a plea agreement if

he or she, "with the consent of the court[,] explicitly reserve[s] the right to appeal a certified question of law that is dispositive of the case, and the requirements of [Tenn. R. Crim. P.] 37(b)(2) are met." Tenn. R. Crim. P. 37(b)(2)(D). The dispositive certified question must be stated in the judgment or incorporated by reference into the judgment from a separately filed document and must clearly identify the scope and limits of the legal issue reserved. See State v. Irwin, 962 S.W.2d 477, 479 (Tenn. 1998); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988).

The State relies on State v. Kristen A. Wilson, No. M2008-01243-CCA-R3-CD, slip op. (Tenn. Crim. App., Nashville, Feb. 10, 2010), in support of its argument for dismissal. In Wilson, a panel of this court determined that the requirements for reserving a question of law were not met where an Agreed Order stating the substance of the certified question was entered on the same day as the judgment but not specifically referred to in the judgment. See id. at 2-4. However, the result in Wilson appears at odds with the supreme court's opinion in State v. Armstrong, 126 S.W.3d 908 (Tenn. 2003). In Armstrong, the supreme court held that a corrective order stating the substance of the reserved question, which order was filed two days after the judgment nunc pro tunc to the date of entry of the judgment and before the filing of the notice of appeal, was sufficient to correct the fact that the judgment had made no reference to the certified question. See id. at 912. In fact, a panel of this court in State v. Bethany R. Mercer, No. E2009-00003-CCA-R3-CD, slip op. (Tenn. Crim. App., Knoxville, Dec. 22, 2009), followed Armstrong and determined that the requirements for reserving a certified question of law were met where the order stating the substance of the question was filed on the same date as the judgment, but not incorporated into the judgment by reference. See id. at 2-3. Because this court concludes that the requirements for reserving a certified question of law were met in this case, the State's motion is not well-taken.

The State argues that this court's analysis is in error because Armstrong is distinguishable from both Bethany R. Mercer and this case in that the document in Armstrong containing the certified question was the trial court's corrective order and thus

-7-

replaced the original order before the Defendant filed a notice of appeal and while the trial court still had jurisdiction to correct omissions in the record. See Tenn. R. Crim. P. 36; Armstrong, 126 S.W.3d at 912. We note that despite the trial court clerk's delay in filing the judgments in this case, the trial court maintained jurisdiction until the judgments were filed, and the Defendant's notice of appeal was premature until that time. See T.R.C.P. 4(c). We conclude that the distinction the State makes between Armstrong and Bethany R. Mercer is unavailing.

We note, however, that the State's contention and our previous order deal only with whether the certified question was properly reserved. Further review of the record reflects that the Defendant failed to include a statement that the certified question is dispositive on either the judgment or the document containing the question. For this reason, we must conclude that the Defendant failed to meet the requirements for reserving a certified question of law.

Our supreme court has strictly construed the Preston requirements. See Armstrong, 126 S.W.3d at 911; State v. Irwin, 962 S.W.2d 477, 478-79 (Tenn. 1998); State v. Pendergrass, 937 S.W.2d 834, 835 (Tenn. 1996). These requirements include that the final order or judgment must contain a statement of the dispositive certified question of law and that

> the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case.

Preston, 759 S.W.2d at 650. As this court noted in its June 8, 2010 order, the Defendant may reserve the certified question without the consent of the State as long as all other requirements are met pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(D).

In this case, the trial court filed the order containing the certified question of law on the same day that the trial court judge signed the final judgments. If the contemporaneous order and judgment met all of the Preston requirements, the certified question would be properly reserved. First, the judgment states that the Defendant has reserved a question for appeal pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(D), satisfying the requirement that the certified question be expressly reserved on a plea of guilty. Second, the trial court judge's signature on the document and the judgment indicate that the question was reserved with his consent, satisfying the second requirement. However, the final requirement is not met because neither the document nor the judgment state that the trial court judge is

"of the opinion that the question is dispositive of the case." See Preston, 759 S.W.2d at 650; Pendergrass, 937 S.W.2d at 835 (holding that judgments were insufficient to reserve a certified question of law because they did not meet Preston requirements and noting that a statement that the question was dispositive was "explicitly required by Preston"); State v. Scott Eric McDonald, No. E2006-02568-CCA-R3-CD, Hamblen County, slip op. at 3 (Tenn. Crim. App. Dec. 20, 2007) (holding that the defendant failed to reserve a certified question because there was no indication of the trial court's or State's consent or agreement that the question was dispositive).

We conclude that we are without jurisdiction to consider the merits of the Defendant's claim because the Defendant has failed to meet the requirements for reserving a certified question of law. In consideration of the foregoing and the record as a whole, the appeal is dismissed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE